UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVIN J. CANNON,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　　　　Defendant. | Case No. 5:16-cv-02352-SHK<br><br>MEMORANDUM AND ORDER |

Plaintiff Marvin J. Cannon ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying his application for disability insurance benefits ("DIB"), under Title II of the Social Security Act (the "Act"). This Court has jurisdiction, under 42 U.S.C. § 405(g), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

/ / /

# I. BACKGROUND

Plaintiff filed an application for DIB on October 31, 2012,[1] alleging disability beginning on September 17, 2012. Transcript ("Tr.") 174-82.[2] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on May 29, 2015, an ALJ determined Plaintiff was not disabled. Tr. 20-33. Plaintiff sought review by the Appeals Council, however, review was denied, on September 20, 2016. Tr. 1-6. This appeal followed.

# II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). That is, "the Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (internal quotations omitted).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196)); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the

---

[1] The ALJ reports an application date of October 28, 2012. Tr. 20. Plaintiff's DIB application, however, indicates a filing date of October 31, 2012. Tr. 174-82.

[2] A certified copy of the Administrative Record was filed on May 16, 2017. Electronic Case Filing Number ("ECF No.") 23. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." (internal citation omitted)). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

### III. DISCUSSION

#### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett, 180 F.3d at 1098 (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at

1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

>Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).

>Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).

>Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [DIB]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).

>Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [DIB]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2 [("the Listings")]. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB]. See id.

Id. at 1098-99.

### B. The Treating Physician's, Dr. Lane, Opinions

Dr. Lane was one of two treating physician's whose opinions the ALJ considered. Dr. Lane, however, appears to have been the physician who treated Plaintiff the longest, from, at least, December 2007 through December 2014. See Tr. 379, 874. During this seven-year span, it appears that Dr. Lane treated and/or evaluated Plaintiff on, at least, 37 occasions. Tr. 379, 385, 386, 391-97, 406-35, 672, 682, 694, 695, 747, 752, and 873.

Following Plaintiff's spine surgery in March 2012 by neurosurgeon Dr. Ostrup, Dr. Lane treated Plaintiff on at least 17 occasions. Tr. 415-35, 672, 694, 695, 747-52, and 873. Though Dr. Lane indicates that Plaintiff stated he was doing well after the surgery, and indicated on July 6, 2012, that Plaintiff had "moderate improvement of his lumbar back pain[,]" by November 2012, Dr. Lane's findings began to reveal that Plaintiff's condition was deteriorating. Tr. 416, 419.

5

For example, on November 30, 2012, Dr. Lane issued a more comprehensive report in which he indicated that he "spent an additional 1 ½ hours reviewing [Plaintiff's] chart and medical records and ha[s] assessed the issues with respect to the A.M.A. *Guides*." Tr. 420 (emphasis in original). Dr. Lane also noted that Plaintiff "initially did well but then began to perform more vigorous activities and his symptoms returned." Tr. 421. In the "Discussion" portion of the report, Dr. Lane compared Plaintiff's condition prior to his back surgery and after his surgery and concluded "there has been new and additional impairment." Tr. 423.

Though Dr. Lane indicated Plaintiff was at a "maximal level of improvement," he stated that Plaintiff's limitations included "difficulty dressing, as well as with standing, sitting, reclining, walking, climbing stairs, lifting, riding, driving, erection, and restful and nocturnal sleep patterns." Id. Dr. Lane at one point concluded that Plaintiff "may work in a position that requires lifting up to ten pounds, and may perform occasional bending and stooping," but later opined that Plaintiff "is unable to return to his usual and customary occupation." Tr. 424-25.

Dr. Lane next appeared to examine Plaintiff in March 23, 2013 and in his remarks stated that Plaintiff has "ongoing back pain and pain into the [right] leg." Tr. 428. This report also notes that Plaintiff was trying to do exercises to improve his condition. Id. On March 30, 2013, Dr. Lane again provided a more comprehensive report, in response to a report by Dr. Dodge, where Dr. Lane modified his earlier conclusion and stated that Plaintiff "can lift up to 20 pounds" but would "maintain [his] prior work limitation." Tr. 430.

On April 23, 2013, and on June 4, 2013, Dr. Lane again treated Plaintiff. Tr. 433-34. In the June 4, 2013, notes, Dr. Lane provided various diagnoses and concluded that "[d]ue to ongoing pain; [Plaintiff] would benefit from a trial of acupuncture." Tr. 434. In addition to these notes, on June 4, 2013, Dr. Lane completed a "Physical Capacities Evaluation" where Dr. Lane concluded that

Plaintiff could sit/stand/walk for 2 hours in an eight-hour workday and stated that Plaintiff "needs to alternate position to avoid pain." Tr. 672-74.

Dr. Lane again treated Plaintiff on July 16, 2013, August 27, 2013, and October 18, 2013, for Plaintiff's ongoing pain. Tr. 435, 682, and 694. At the October 18, 2013, visit, Dr. Lane again referred Plaintiff to the neurosurgeon, Dr. Ostrup, "[d]ue to persistent stenosis which has been progressively worse [and Plaintiff] needs reevaluation." Tr. 694. On a November 25, 2013, visit, Dr. Lane noted that Plaintiff met with Dr. Ostrup on December 12 and Plaintiff's "gait: assisted with a cane." Tr. 695.

Dr. Lane continued to treat Plaintiff on May 12, 2014, noting "[b]ack pain continues and has worsened," Tr. 747; June 9, 2014, which included a questionnaire where Plaintiff indicated "no" to needing assistance with transportation, shopping/errands, and domestic chores, Tr. 752; and December 22, 2014. Tr. 873. In this, what appears to be a latest visit considered by the ALJ, on December 22, 2014, Dr. Lane opined that Plaintiff can stand/walk/sit for less than 2 hours during a normal 8-hour day. Id. Dr. Lane also opined that Plaintiff would be absent "[m]ore than four days per month." Tr. 874.

**C.     Summary Of ALJ's Findings**

The ALJ determined that "[Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2017." Tr. 23. The ALJ then found at step one, that "[Plaintiff] has not engaged in [SGA] since September 17, 2012, the alleged onset date (20 C.F.R. 404.1517 et seq.)." Id.

At step two, the ALJ found that "[Plaintiff] has the following severe impairments: degenerative disc disease of the lumbar spine, [and] status post laminectomy on March 28, 2012 (20 CFR 404.1520(c))." Id. (internal quotation marks omitted). The ALJ found, however, that Plaintiff's obesity and hypertension were not severe impairments. Tr. 23-24.

7

At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in [the Listings]." Tr. 24.

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to "perform a range of sedentary work" and that he could specifically "lift and/or carry 10 pounds occasionally and less than 10 pounds frequently . . . stand and/or walk for two hours out of an eight-hour workday with regular breaks . . . [and] sit for six hours out of an eight-hour workday with regular breaks." Id. In so finding, the ALJ discussed Plaintiff's medical records from May 2007, when Plaintiff injured his back at work, through the last medical record in Plaintiff's file from December 2014. Tr. 26-31.

The ALJ made the following observations about Plaintiff's medical records. Plaintiff injured his back in May 2007 after a well fell onto him.[3] Tr. 27. After sustaining this injury, Plaintiff initiated a worker's compensation claim, began receiving treatment for his injury, and eventually returned to work as an administrative assistant. Id. Plaintiff reinjured his back, however, and again stopped working as a result of this new injury. Id. Plaintiff "remained symptomatic" and on March 28, 2012, Plaintiff had back surgery, performed by a neurosurgeon, Richard Ostrup, M.D., and eventually resumed physical therapy after completing a six-day stay in the hospital following his surgery. Id. Nearly three months later, Plaintiff "was cleared to return to modified work duty" on June 24, 2012, and was restricted from lifting over twenty-five pounds, bending, or twisting. Id.

In July 2012, Plaintiff "was noted to be doing well . . . to have mild back pain . . . [with] no significant leg pain or weakness[,]" and was discharged from the care of his neurosurgeon, Dr. Ostrup. Id. Upon discharging Plaintiff, Dr. Ostrup noted

---

[3] This reference to a well appears to a be a typographical error because Plaintiff was originally hurt as a result of a "wall" falling and hitting him, while working on a ship. Tr. 51.

8

that "[Plaintiff's] condition had improved[,]" Plaintiff "requested to return to work[,]" and Plaintiff "admitted that he took his pain medications on an infrequent basis." Id. Dr. Ostrup limited Plaintiff to modified duty restrictions, including lifting no more than twenty-five pounds. Id.

In August 2012, Plaintiff reported to doctors that he was doing well, and he again "acknowledged that he only took pain medication on an as-needed basis." Tr. 28. Physical examination notes from August 2012 revealed that Plaintiff had tenderness in his lumbar spine and a sensory deficit in his right thigh. Id. Plaintiff, however, had a "full range of motion and no bony tenderness in his spine." Id.

On November 30, 2012, Plaintiff's treating orthopedic surgeon, Dr. Lane, examined Plaintiff and found that Plaintiff had tenderness and a decreased range of motion in his spine, decreased sensation in his thighs, and "moderately significant degenerative disc disease . . . with multiple spurring throughout the lumbar area" of his spine. Id. Dr. Lane opined that Plaintiff had achieved "maximum medical improvement" at that point and that Plaintiff would be able to lift up to ten pounds and could perform only occasional bending and stooping. Id.

On December 6, 2013,[4] Dr. Ostrup examined Plaintiff and found that Plaintiff had tenderness in his back, but was "neurologically normal[,]" Plaintiff's straight leg raise was negative, Plaintiff's reflexes were normal, and that Plaintiff had no weakness in his lower extremities. Tr. 28.

On January 9, 2013, consultative examiner Larry Dodge, M.D., noted that Plaintiff had a decreased range of motion in his spine and that a "straight-leg-raising test caused pain in the back at [sixty] degrees in the supine and seated positions." Id. Dr. Dodge also noted, however, that Plaintiff "reported exquisite

---

[4] The ALJ listed the date of this examination as December 6, 2012, and included it chronologically between Dr. Lane's November 30, 2012, report, and the consultative examination report of Larry Dodge, M.D., from January 9, 2013. Id. The record reveals, however, that this examination and the resulting report was made one year later, on December 6, 2013. Tr. 701-03.

tenderness to touch on his scar area, which was unusual and suggestive of possible symptom magnification." Id. Dr. Dodge added that Plaintiff "was able to ambulate across the examination room without difficulty, limp, or antalgic gait[,]" and that Plaintiff's "motor testing was normal." Tr. 29. Dr. Dodge opined that Plaintiff could lift up to twenty-five pounds, and was precluded from repetitive bending and stooping. Id.

On March 5, 2013, consultative examiner Frederick Close, M.D., reported that Plaintiff had tenderness in his back, a "moderately severe bilateral lumbar spasm[,]" numbness in his right thigh, and a decreased range of motion in his lumbar spine and shoulder. Id. Dr. Close also reported, however, that Plaintiff's gait was normal, Plaintiff's straight leg test was negative, and that Plaintiff's sensory examination results were normal. Id. Dr. Close concluded that Plaintiff could "perform a full range of medium exertional work." Id.

On June 4, 2013, Dr. Lane opined that Plaintiff could "perform less than a full range of sedentary exertional work; he could sit, stand, and/or walk for two hours out of an eight-hour workday; he was precluded from crawling; he needed to alternate positions; and he could occasionally bend." Id.

On December 22, 2014, Dr. Lane opined that Plaintiff "could perform a limited range of sedentary exertional work; he could sit, stand and/or walk for less than two hours out of an eight-hour day; and he needed to change positions every five minutes." Id. Dr. Lane added that Plaintiff "would need to be absent from work more than four days per month; he would have to take three unscheduled breaks during an eight-hour day; he was precluded from crouching and climbing ladders; and he could occasionally twist, stoop (bend), and climb stairs." Id.

After summarizing the medical evidence, the ALJ assigned weight to the various medical source opinions in the record. Tr. 29-31. The ALJ began his analysis by giving "little weight" to Dr. Lane's June 2013 and December 2014 opinions because "Dr. Lane failed to set forth the specific clinical and/or objective

evidence that support the limitations assessed . . . [and] the record does not support limiting [Plaintiff] to sitting for two hours per day." Tr. 29. The ALJ added that these two opinions were due little weight because it also "appears that Dr. Lane was sympathetic to [Plaintiff] . . . [and] assessed limitations that are greater than that what is supported by the record as a whole." Id. The ALJ highlighted that "Plaintiff's neurosurgeon noted that [Plaintiff] was neurologically intact, which supports the [ALJ's] determination that [Plaintiff] could perform work with the limitations assessed in this decision." Id.

The ALJ then assigned "partial weight" to Dr. Lane's opinion from November 2012, that Plaintiff could lift up to ten pounds and could occasionally bend and stoop. Id. The ALJ explained that "the longitudinal evidence does not support limiting Plaintiff to no more than occasional bending or stooping; however, the objective diagnostic evidence supports limiting [Plaintiff] to performing less than a full range of sedentary work." Id.

The ALJ gave "minimal weight" to Dr. Lane's assessment from 2008 that Plaintiff "could perform a range of light exertional work" and that Plaintiff "was precluded from weight bearing for more than six hours in an eight-hour workday." Tr. 31. The ALJ similarly gave "minimal weight" to Dr. Shoemaker's opinion from 2007 that Plaintiff could perform sedentary exertional work. Id. The ALJ reasoned that both of these opinions were do minimal weight because "those opinions were rendered more than four years prior to [Plaintiff's] alleged onset date[,]" they were from "before [Plaintiff] had reached maximum medical improvement[,]" and Dr. Lane's 2008 assessment was made when "Dr. Lane did not have the benefit of considering all the medical evidence of record or [Plaintiff's] testimony at the hearing." Id.

The ALJ also discussed Dr. Lane's June 2008 opinion from within Plaintiff's workers' compensation medical records, where Dr. Lane found that Plaintiff was "temporarily totally disabled" ("TTD"). Id. The ALJ found that Dr. Lane's

11

opinion that Plaintiff was TTD was "not relevant" to the instant disability analysis because the criterion used to determine whether someone is TTD "is not the same criterion used to determine disability under the . . . Act." Id. The ALJ explained that a TTD determination in a workers' compensation disability analysis examines whether "at a certain moment or for a certain period of time a worker is unable to return to the job being performed at the time of the injury, with or without modifications to the job requirements." Id. The ALJ, however, did consider "[t]he objective clinical and diagnostic evidence used by [Dr. Lane] to come to that conclusion[,]" and found that "[t]his objective evidence is consistent with a determination that [Plaintiff] could do work with the limitations noted" in the RFC. Id.

The ALJ then gave "some weight" and "little weight" to the opinions of the State agency medical consultants and Drs. Dodge, Ostrup, and Close, who all opined that Plaintiff retained the capacity to perform work at the medium exertional levels and could lift between twenty-five and thirty-five pounds, in part, because the RFC "assessed in [his] decision gives greater limitations based upon the totality of the evidence." Tr. 30-31.

The ALJ concluded his assessment of the medical evidence by noting that although "the record shows [that Plaintiff] had some continuing back problems, the records convey that [Plaintiff] has responded fairly well to his lumbar spine surgery in 2012" and "the longitudinal evidence does not reflect that [Plaintiff] has neurological deficits because of his back impairments." Tr. 30.

At step four, the ALJ found that "[Plaintiff] is capable of performing [his] past relevant work [("PRW")] as an administrative assistant" "as generally and actually performed." Tr. 31, 32. The ALJ concluded that because Plaintiff was able to return to his PRW, "[Plaintiff] has not been under a disability, as defined in the . . . Act, from September 17, 2012, through [May 29, 2015,] the date of th[e]

decision." Tr. 32. Having concluded that Plaintiff was not disabled at step four, the ALJ did not assess whether Plaintiff could perform other work at step five.

### D. Summary Of Plaintiff's Arguments

In this appeal, Plaintiff argues that the ALJ erred by: (1) rejecting the opinion from his treating orthopedic surgeon, Dr. Lane; (2) rejecting his subjective symptom statements concerning the extent and severity of his impairments without considering Plaintiff's "stellar work history"; and (3) failing to rule on post hearing objections to the VE's testimony about the nature of Plaintiff's PRW. ECF No. 29, Joint Stipulation at 4-5. The Court finds that the ALJ improperly rejected Dr. Lane's opinion when finding that Plaintiff could perform "his past relevant work of an administrative assistant as generally and actually performed." Tr. 32.

### E. Standard To Review ALJ's Assessment Of The Opinion Of Dr. Lane, The Primary Treating Physician

There are three types of medical opinions in Social Security cases: those from treating physicians, examining physicians, and non-examining physicians. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." Id. (citing 20 C.F.R. § 404.1527(c)(2)–(6)).

"'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial

13

evidence.'" Id. (quoting Ryan v. Comm'r Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir. 2008)). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'" Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

"'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" Trevizo, 871 F.3d at 675 (quoting Ryan, 528 F.3d at 1198). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" Garrison, 759 F.3d at 1012 (quoting Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007)). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Trevizo, 871 F.3d at 675 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

**F.    Analysis**

As set forth previously, Dr. Lane was one of two treating physician's whose opinions the ALJ considered. The ALJ provided several reasons for discounting each of Dr. Lane's opinions. First, the ALJ noted contradictions between the limitations Dr. Lane endorsed—that Plaintiff could perform less than a full-range of sedentary work and could lift up to only ten pounds, as well as the opinions of Drs. Dodge, Ostrup, and Close—that Plaintiff could perform work at the medium exertional levels and could lift between twenty-five and thirty-five pounds. Because limitations endorsed by Dr. Lane were contradicted by the opinions of three other doctors, the Court must determine whether the ALJ's conclusion—that Dr. Lane's opinions were due reduced weight—was supported by specific and legitimate reasons and substantial evidence in the record. The Court addresses

each of the ALJ's assignments of weight to Dr. Lane's opinions in turn, starting with the ALJ's analysis of Dr. Lane's earliest opinions.

The ALJ found that the limitation Dr. Lane endorsed in 2008—that Plaintiff had the capability to perform a range of light exertional work, and that Plaintiff could bear weight for up to six hours per day—was due minimal weight because it predated Plaintiff's alleged disability onset date by four years, was from before Plaintiff's back surgery, which the ALJ found that Plaintiff responded well to, was from before Plaintiff reached maximum medical improvement, and was made at a time when Dr. Lane did not have access to all the evidence in the record. This Court finds that these reasons are specific and legitimate and are supported by substantial evidence in the record. See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance." (citation omitted)).

Moreover, the limitations that Dr. Lane endorsed in this assessment, that Plaintiff had the capability to perform a range of light exertional work, were less restrictive than the limitations the ALJ endorsed in the RFC, which limited Plaintiff to performing a range of sedentary work and to standing and/or walking for only two hours per day. Finally, Plaintiff appears to concede that the ALJ's limitations were more restrictive than those assessed by Dr. Lane in this assessment. See Tr. 29, Joint Stipulation at 25 ("Plaintiff concedes that earlier opinions of Dr. Lane described less significant limitations."); id. at 34 ("Plaintiff concedes that given the degenerative nature of his impairment . . . frankly, in 2008 [Dr. Lane] did not identify much in the way of limitations other than an inability to perform prior work."). Accordingly, the Court finds no error in the ALJ's analysis of Dr. Lane's 2008 assessment, which endorsed limitations that were less restrictive than the limitations the ALJ ultimately endorsed in the RFC.

Similarly, the Court finds no error in the ALJ's analysis of Dr. Lane's June 2008 opinion from Plaintiff's workers' compensation records. In addition to the

15

reasons discussed above for rejecting Dr. Lane's other 2008 opinion—that the opinion evidence from 2008 was essentially stale—as the ALJ correctly found here, a determination that someone is TTD for workers' compensation purposes is not relevant to a DIB analysis because the criteria for making each determination are different. See 20 C.F.R. § 404.1504 ("Other governmental agencies . . . make disability[,] . . . workers' compensation, and other benefits decisions for their own programs using their own rules."  However, "[b]ecause a decision by any other . . . agency . . . about whether you are disabled . . . is based on its rules, it is not binding on [the Commissioner] and is not [the Commissioner's] decision about whether you are disabled . . . under [the Commissioner's] rules."); see also Marci v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (workers' compensation guidelines "are not conclusive in a social security case" (citation omitted)).  Accordingly, the Court finds that the ALJ did not err in his analysis of this evidence.

The Court next turns to the ALJ's analysis of Dr. Lane's opinions that were rendered after Plaintiff's March 2012 surgery.  The ALJ gave partial weight to Dr. Lane's opinion from November 2012, that Plaintiff could only occasionally bend and stoop, lift up to ten pounds, and had reached maximum medical improvement.  Tr. 29-30.  Specifically, the ALJ found that the longitudinal evidence did not support Dr. Lane's opinion that Plaintiff could only occasionally bend and stoop.  Id.  The ALJ found, however, that Dr. Lane's assessment—that Plaintiff would be limited to performing less than a full range of sedentary work—was supported by objective diagnostic evidence in the record.  Tr. 30.  The ALJ rendered no finding with regard to Dr. Lane's opinion that Plaintiff could lift only ten pounds, but later incorporated that limitation in his RFC finding.  Tr. 24.  Accordingly, because the ALJ only disagreed with the portion of Dr. Lane's November 2012 opinion that Plaintiff could only occasionally bend and stoop, the Court examines whether this was error, and finds that it was not.

16

The ALJ supported his conclusion that Plaintiff had fewer restrictions in his ability to bend and stoop than Dr. Lane opined in November 2012 by discussing the contradicting opinions and diagnostic findings of other doctors, that Plaintiff had no limitations in his ability to bend and stoop. Tr. 28-31. Specifically, the ALJ cited reports indicating that Plaintiff: had a "full range of motion and no bony tenderness in his spine"; was "neurologically normal"; was "able to ambulate across the examining room without difficulty, limp, or antalgic gait"; displayed "normal" motor testing and sensory examination; was able to "frequently" kneel, crouch, and crawl; was "able to perform a full range of medium exertional work" without any postural limitations; and displayed "possible symptom magnification." Id.

Moreover, contrary to Plaintiff's assertion that the ALJ's reporting of the record was highly selective, the ALJ also noted opinions from other doctors that Plaintiff had a "decreased range of motion" in his "spine" and his "thoracolumbar spine"; was "precluded from repetitive bending and stooping"; and was limited to only "occasional" stooping. Id. Thus, the ALJ's conclusion was supported by an examination of the conflicting evidence that both supports and detracts from his ultimate conclusion. Accordingly, the Court finds no error in the ALJ's analysis of this evidence. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) (When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." (citation omitted)).

Finally, the Court addresses the ALJ's weighing of Dr. Lane's June 2013 and December 2014 opinions, which provide the greatest limitations on Plaintiff's abilities. The ALJ gave reduced weight to these opinions because, the ALJ found, they were unsupported by objective evidence, were inconsistent with the rest of the medical record, and it appeared Dr. Lane was sympathetic to Plaintiff because he endorsed limitations that were not supported by the record as a whole. Tr. 29. The Court finds that these conclusions by the ALJ were not supported by

17

substantial evidence and require a closer review by the ALJ of these and other diagnoses by Dr. Lane.

First, there is no basis to believe that Dr. Lane's opinions regarding Plaintiff were biased and the ALJ does not point to anything in any of the numerous notes or reports by Dr. Lane that Dr. Lane was guided by anything other than his objective medical analysis. Second, the record as a whole supports Dr. Lane's findings that Plaintiff's pain, though initially abated, continued to get worse. See, e.g., Tr. 747 (noting in May 12, 2014 diagnosis that "[b]ack pain continues and has worsened").

The ALJ also improperly discounts the June 4, 2013, and December 22, 2014, reports because there was no "specific clinical and or objective evidence that supports the limitations assessed." Tr. 29. This conclusion ignores the numerous diagnosis notes in 2013 and 2014 that were made and presumably considered by Dr. Lane as part of his conclusions. These opinions by Dr. Lane should, therefore, have been given greater deference. See Morgan v. Comm'r Soc. Sec. Admin., 169 F. 3d 595, 600 (9th Cir. 1990) (noting that treating physician's opinion should be given deference because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual"). Moreover, in discounting these opinions that contradict the RFC finding, the ALJ did not appear to "consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship." Trevizo, 871 F. 3d at 676 (citing 20 C.F.R. § 404.1527(c)(2)-(6)). Though the ALJ indicated he did analyze the supportability of the opinions, the ALJ did not appear to consider the consistent and numerous diagnoses that Dr. Lane provided regarding Plaintiff's pain.

The ALJ also appeared to cite to the neurosurgeon's opinion, to whom Dr. Lane referred Plaintiff, in support of his decision to diminish the impact of Dr. Lane's opinions when he stated that "the claimant's neurosurgeon noted that claimant was neurologically intact." Tr. 29. This does not mean that Plaintiff had a controlled level of pain. In fact, a full reading of the neurosurgeon's report of

December 13, 2013, provides: "[Plaintiff] states that he continues to have significant back pain. This is not positionally related. He may get some benefit when he lies prone, but for the most part, the back pain is an ongoing issue." Tr. 701. The ALJ's failure to consider this aspect of the report should be corrected on remand. See Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

Finally, these two later opinions by Dr. Lane were later than all but one of the other opinions and allowed Dr. Lane to consider the most recent medical evidence. See Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995), as amended (Apr. 9, 1996) (holding a later opinion "based on a more complete evaluation" of plaintiff's impairments should be accorded greater weight). In so doing, Dr. Lane concluded that Plaintiff's limitations were less than the RFC that the ALJ concluded was possible.

In conclusion, though the ALJ properly discounted several earlier opinions by the treating physician, Dr. Lane, the discounting of Dr. Lane's later opinions which indicated greater limitations than the RFC was improper based on the analysis provided by the ALJ.

## IV. CONCLUSION

Because the record was not fully developed as result of the ALJ's failure to consider the bases for the treating physician's later medical opinions regarding Plaintiff's limitations in his ability to sit, stand, and walk, IT IS ORDERED that the Commissioner's decision is REVERSED and this case is REMANDED for further administrative proceedings as set forth above. See Garrison, 759 F.3d at 1009 (holding that under sentence four of 42 U.S.C. § 405(g), "the Court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

19

IT IS SO ORDERED.

DATED: 5/30/2018

_____
HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge